IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT G. WING, as Receiver for VESCOR CAPITAL CORP., a Nevada corporation, et al.,<br><br>    Plaintiff,<br><br>vs.<br><br>BRUCE S. GILLIS, individually and as trustee of the BRUCE S. GILLIS MD MPH INC. PENSION TRUST and as trustee of the CLOUD NINE AVIATION, LLC RETIREMENT TRUST,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 2:09-cv-314<br>Judge Dee Benson |

    This matter is before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 56), and Defendants' Cross Motion for Summary Judgment (Dkt. No. 60). At the parties' request, the Court heard oral argument on the matter. M. David Eckersley appeared on behalf of the Receiver and Sean N. Egan appeared on behalf of the Defendants. Now, having fully considered the parties' written and oral arguments, the Court enters the following Memorandum Decision and Order.

1

## BACKGROUND

This action is one of many arising from the collapse of an alleged Ponzi scheme orchestrated and run by Val Southwick through a complex web of over 150 corporations and limited liability companies collectively referred to as VesCor. On February 6, 2008, the United States Securities and Exchange Commission ("SEC") filed suit against Southwick and VesCor, alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. On May 5, 2008, the Court appointed Robert G. Wing as Receiver for the VesCor affiliated business entities.

The Receiver then proceeded to file numerous ancillary actions in an attempt to recover the "fraudulent transfers" caused by Southwick. In this particular case, the Receiver filed the underlying ancillary action against Dr. Bruce Gillis both in his individual capacity and as the trustee of the Bruce S. Gillis MD MPH Inc. Pension Trust ("MPH") and Cloud Nine Aviation, LLC Retirement Trust ("Cloud Nine") (collectively, the "Trusts").[1] Each of the Trusts were investors with VesCor that received more money than they invested.

The Receiver and the Defendant Trusts have filed cross motions for summary judgment. The Receiver asserts that he has met his summary judgment burden because he has established that VesCor was operated as a Ponzi scheme and therefore, applying the Ponzi scheme presumption which this Court has adopted in the larger receivership case, the Trusts must return the amounts they received which exceeded their investments. The Defendants assert, however,

---

[1] Dr. Gillis, in his individual capacity, has been dismissed from this lawsuit.

that regardless of whether VesCor was operated as a Ponzi scheme, the Trusts are entitled to summary judgment because: (a) the Receiver lacks jurisdiction over the Trusts' assets; (b) the Trusts' assets are exempt from judgment under California law; and (c) based on principles of equity, the Receiver should be estopped from pursuing claims against the Trusts. Finally, the Defendants assert that even if the Receiver is permitted to recover from the Trusts, the Receiver has improperly included an additional $1,240,000.00 (reflecting the amount MPH received when it sold its interest in a VesCor project to Stephen A. Shapiro) to the amount it claims is recoverable from the MPH Trust.

## **DISCUSSION**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Utah R. Civ. P. 56(c). "A 'material fact' is one 'that might affect the outcome of the suit under the governing law, and a 'genuine' issue is one for which 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Pelt v. Utah, 539 F.3d 1271, 1280 (10th Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal citation omitted). In accord with this standard, and for the following reasons, the Court grants the Receiver's motion for summary judgment and denies the Defendant Trusts' motion for summary judgment.

1. Ponzi Scheme Presumption Applies

The Receiver's theory of fraudulent transfer relies on the Ponzi scheme doctrine to establish that the monies VesCor paid to the Defendants were fraudulent transfers.  See Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995).  "Under the [Uniform Fraudulent Transfer Act], a debtor's actual intent to hinder, delay, or defraud is conclusively established by proving that the debtor operated as a Ponzi scheme."  Warfield v. Carnie, No. 3:04-cv-0633, 2007 WL 1112591 *2 (N.D. Tex. Apr. 13, 2007);  Donell v. Kowell, 533 F.3d 762, 770 (9th Cir. 2008) ("The mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud.") (quoting In re AFI Holding, Inc., 525 F.3d 700, 703 (9th Cir. 2008)); In re Indep. Clearing House, 77 B.R. 843, 860 (D. Utah 1987) ("One can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible."). To invoke the Ponzi scheme doctrine, the Receiver has endeavored to prove that VesCor operated as a Ponzi scheme.  As evidence, the Receiver relies on a forensic accounting of VesCor's financial and business records, and testimony of VesCor employees and insiders.  The sum of this information caused the Receiver's expert, Gil Miller, to conclude that beginning in 2000 VesCor "exhibited characteristics of a Ponzi scheme." (Third Decl. of Gil A. Miller ¶ 8.)

The Receiver's evidence on the issue of whether VesCor was a Ponzi scheme has not been rebutted by the Defendants.  Given the Receiver's unchallenged evidence, the Court concludes that there is not a genuine issue of fact whether VesCor operated as a Ponzi scheme. See Wing v. Dockstader, Slip Copy, 2010 WL 5020959 (D. Utah Dec. 3, 2010).  This conclusion is significant because having proved that VesCor operated as a Ponzi scheme, the Receiver has

conclusively established that VesCor transferred the investment returns to the Defendants with the intent to defraud the investors, making the transfers to the Trusts "fraudulent transfers" within the meaning of the Uniform Fraudulent Transfer Act. Wing v. Holder, Slip Copy, 2010 WL 5021087 (D. Utah Dec. 3, 2010).

Although the UFTA provides for a defense to the fraudulent transfers if the defendants can show they provided reasonably equivalent value and received the payments in good faith, in the context of a ponzi scheme it is difficult for even an innocent investor to make such a showing. Wing v. Dockstader, 2010 WL 5020959, *5 (D. Utah Dec. 3, 2010). "Where causes of action are brought under the UFTA against Ponzi scheme investors, the general rule is to the extent innocent investors have received payment in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers . . . ." Id. (quoting Donell, 533 F.3d at 770.) "If investors receive more than they invested, payments in excess of amounts invested are considered fictitious profits because they do not represent a return on legitimate investment activity." Id. (quoting Donell 533, F.3d at 772.) Such payments "deplete the assets of the scheme operator for the purpose of creating the appearance of profitable business venture." Wing v. Holder, 2010 WL 5021087 (D. Utah Dec. 3, 2010). For these reasons, and in accord with prior decisions in the larger receivership action, the Court concludes that the investment returns VesCor paid to the Trusts were fraudulent transfers. Therefore, the amounts received by the Trusts which exceed the amount of their investments must be returned.

### 2. Jurisdiction Over the Trusts' Assets

Next, the Court finds as a matter of law that it has jurisdiction over the property that is the subject of this lawsuit. The Receivership jurisdiction statute, 28 U.S.C. § 754, requires the Receiver to "file copies of the Complaint and [] order of appointment in the district court for each district in which property is located." Id.

In this case, the Defendants concede that the Receiver properly filed the Section 754 notice in the Central District of California. However, the Defendants claim that the Receiver erred by failing to file the Section 754 notice in the correct *division* of the district. (Defs.' Mem. In Opp'n at 9.) The Court finds Defendants' argument without merit. The Defendants have not provided any legal authority to support their argument that the Receiver must file a Section 754 notice in each division in which property may reside, and the Court is not aware of any. The receivership jurisdiction statute refers only to districts -- not divisions -- and property located within a division is necessarily located in the district of which that division is a constituent part. Accordingly, the Court concludes that the Receiver has satisfied the jurisdictional requirements of 28 U.S.C. § 754.

### 3. The Trusts' Assets are Not Exempt

Similarly, the Court concludes that the Defendants' reliance on the California exemption statute, Cal.C.C.P. § 704.115, is misplaced, and the Trusts' assets are not exempt from execution under California law. The Court agrees with and adopts the argument of the Receiver, finding that under the California statute assets of the private retirement plans are exempt from claims against the *beneficiaries* of those plans, but not from claims against the plans themselves. In

other words, the funds in the retirement plans are exempt from judgment creditors of the beneficiaries of the plan. It is the retirees who are protected by the statute, not the Trusts.

In this case, the Receiver's fraudulent transfer claims are against the Trusts themselves, and the Court is not aware of anything in the California exemption statute, or any other authority, that would exempt the assets of the Trusts from the Receiver's claims. The Trusts are simply two of the many investors in the VesCor ponzi scheme, and there is nothing in the California exemption statute that requires this Court to treat them any differently than any other investors in the Ponzi scheme who received payments from VesCor in excess of the amounts they invested. Thus, the Defendants are not exempt from the Receiver's fraudulent transfer claim.

    4. <u>Equity Does Not Demand a Different Result</u>

Next, the Defendants assert that the Receiver's claims against the Trusts should be dismissed on the basis of estoppel. The Defendants argue that where two parties stand to suffer a loss because of the misconduct of a third party, the law favors the most innocent party. (Defs.' Mem. In Supp. of Cross-Motion for SJ at 13.) In addition, Defendants rely on a 2004 agreement whereby VesCor agreed with the Utah Division of Securities to pay its then current investors both their principal and accrued interest. The Defendants assert that they were investors at the time of the 2004 agreement and are necessarily included as beneficiaries of that agreement. (Defs.' Mem. In Supp. of Cross-Mot. For SJ at 12.)

Having reviewed the Defendants' argument and the cases cited therein, the Court finds that the Defendants have shown no reason why they should be treated any differently than other VesCor investors. As an initial matter, the cases cited by the Defendants are not fraudulent

transfer cases brought by an equity receiver and, therefore, are not persuasive with regard to the facts presently before the Court. Moreover, courts have generally concluded that equitable estoppel based on the pre-receivership conduct of the entity in receivership cannot be asserted against the Receiver. See, e.g., Warfield v. Alaniz, 453 F. Supp. 2d 118, 1132 (D. Ariz 2006), aff'd 569 F.3d 1015 (9th Cir. 2009) (providing that equitable defenses such as estoppel and laches are not available against a federal equity receiver who is an agent of the government or officer of the court). Along these lines, this Court has previously explained that under Scholes, the Receiver is not necessarily subject to equitable defenses that could be used against VesCor. See Wing v. Kendrick, 2009 WL 1362383 (D. Utah May 14, 2009) (declining to enforce a pre-receivership settlement agreement between Kendrick and VesCor and stating: "It necessarily follows that a Receiver is not always subject to the claims and defenses that could have been raised against the entity before the Receiver was appointed.").

As explained above, the Defendant Trusts were simply two of many investors in VesCor and as such they are on the same footing as all VesCor investors. Accordingly, because the Trusts received more money than they invested, the amounts they received which exceed the amount of their investments must be returned.

     5.  The Shapiro Transaction

Having concluded that Ponzi scheme presumption applies and the Trusts must return the amounts they received which exceeded their investments, the Court turns its attention to determining the amount that the Trusts must return to the receivership estate.

The parties do not dispute that Cloud Nine invested $135,000.00 with VesCor and

received payments of $168,939.94.  (Defs.' Mem. In Supp. Of Cross Mot. For SJ at 4.) Therefore, and for the reasons set forth above, the net gain of $33,939.94 must be returned to the receivership estate as fraudulent transfer.

The parties dispute, however, the amount recoverable from the MPH Trust.  The Defendants claim that the Receiver is improperly seeking to add to the amount recoverable from MPH an additional $1,240,000.00 which reflects the amount the MPH Trust received when it sold part of its interest in VesCor to Steven Shapiro.  The Receiver, on the other hand, explains that it is not seeking to recover the amount paid by Mr. Shapiro to the MPH Trust, but rather MPH simply is not entitled to offset its liability to the receivership in this amount because by assigning its interest in a $1,240,000.00 investment to Mr. Shapiro, MPH divested itself of the right to claim that amount as part of its investment

Having reviewed the parties' arguments and the relevant law, the Court agrees with the Receiver.  Accordingly, the Court finds that MPH received payments of $2,925,015.98 from VesCor and invested a total of $2,376,348.32.  However, MPH then reduced the amount of its investment when it assigned part of its investment to Mr. Shapiro in exchange for a payment of $1,240,000.00.  This assignment to Shapiro reduced the amount of MPH's investment, and consequently reduces the amount by which MPH can be deemed to have given reasonably equivalent value in exchange for the payments it received.  After assigning its claim to Shapiro, MPH's investment in VesCor (and therefore its offset) is reduced to $1,136,348.32. Accordingly, MPH must return $1,788,667.66 to the receivership estate.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendants' cross motion for summary judgment. Defendant Cloud Nine Trust must return $33,939.94 to the receivership estate, and Defendant MPH Trust must return $1,788,667.66 to the receivership estate.

DATED this 22nd day of March, 2012.

_____
Dee Benson
United States District Judge